## JORDAN *v.* BEECHER *et al.*

1. The law does not countenance the employment of criminal process for the collection of debts. Where a criminal warrant is issued, and its principal object is to enforce the collection of a debt due to a corporation of which the magistrate issuing the warrant is the president, and the defendant is imprisoned under such warrant, a conveyance of property to the prosecuting creditor, obtained by means of such imprisonment, in order to secure his release, is void.

2. Where the fears or affections of a wife are worked upon through criminal proceedings instituted against her husband, and she is induced thereby against her will to convey her property, through the medium of her husband, to her husband's creditor to pay her husband's debt and

obtain his release from imprisonment, there is duress as to her; and a purchaser from the husband's creditor, with notice of the wife's equity, can not prevail in an action to recover the land from her.

3. The court's instruction is not open to the criticism made of it.

FEBRUARY 11, 1915.

Complaint for land. Before Judge Parker. Coffee superior court. December 24, 1913.

H. H. Jordan brought an action against E. C. Beecher and Drucilla Beecher, to recover possession of a tract of land. In the abstract of title incorporated in the petition it appeared that the plaintiff claimed title by virtue of a deed from Drucilla Beecher to E. C. Beecher, dated December 16, 1908, upon a voluntary consideration, and a deed from E. C. Beecher to the Henderson-Powell Company, dated December 17, 1908, and a deed from Henderson-Powell Company to the plaintiff, dated August 23, 1911. The defendants pleaded that they sustained the relation of husband and wife, and that the deed from the wife to the husband and his deed to the Henderson-Powell Company were obtained by duress and were without consideration, and were given for the purpose of settling a debt due by the husband to the Henderson-Powell Company and in settlement of a criminal prosecution instituted by the Henderson-Powell Company against the husband. The evidence made the following case. The plaintiff testified that he bought the land from the Henderson-Powell Company in August, 1911, on a consideration of $500, which was evidenced by his two notes of $250 each, indorsed by his brother-in-law, and payable in December, 1912 and 1913; that he did not pay the first note when it fell due, nor has he paid either of them; that he is a farmer by occupation; that the manager of the Henderson-Powell Company approached him to sell him the land, and informed him that it was unoccupied. He had never seen the land, but inquired as to its value, and was told that it was worth from $1,000 to $1,200. In fact the land was worth $1,500. He did not inspect the land, but agreed to purchase it, if the title was approved by his brother-in-law. He did not know at the time he bought the land that the defendants had any claim to it, and he bought in good faith. The draftsman of the deeds from Mr. and Mrs. Beecher testified, in behalf of the plaintiff, that he explained to Mrs. Beecher, at the time the deeds were drawn, that the only way she could transfer her property to her husband was by making him a deed of gift; that she could not

be forced to make such a deed, and need not do it unless she wanted to, to which Mrs. Beecher replied that it was her desire to make the deed and pay her husband's debt. He further told the defendants at the time of making the deeds that they did not settle the criminal prosecution against her husband, and that it could not be settled. Mrs. Beecher signed the deed willingly, stating that she was perfectly willing to deed this property to her husband, so he could pay his debts. The substance of the testimony of the defendants was as follows: In 1908 the husband became indebted to the Henderson-Powell Company for supplies, and, on failing to pay in the fall of the year, the manager of that corporation sued out a warrant before a justice of the peace, who was the president of the corporation. Beecher was arrested and put in jail. His creditors agreed to his release on condition that he would procure his wife to make him a deed to the land, and he in turn execute a deed to them. He promised to do so, and was allowed to go to his home, but in a few days he was rearrested and put in jail. Henderson, the president of the Henderson-Powell Company, told him that if he would convey this property to that company in settlement of his debt they would release him from jail and settle the criminal prosecution which they had instituted, but if he refused to do it they intended to push the prosecution, and he would probably be found guilty and have to serve a term in the chain-gang. He informed his wife that the only way to get out of his trouble and settle the prosecution was to give a deed to the Henderson-Powell Company to her land. The wife met her husband in the office of the attorney of the Henderson-Powell Company, and there, in the presence of the president of the Henderson-Powell Company and the sheriff, who had the husband in custody, the wife made the husband a deed upon a purported consideration of love and affection, and the husband executed to his creditor, the Henderson-Powell Company, a deed upon a purported consideration of $275, and he was then released at the bidding of the creditor. The wife was unwilling to convey her land to her husband, and only did so to bring about his release from imprisonment. During the time between this transaction and the bringing of the suit (more than three years) neither the Henderson-Powell Company nor the plaintiff ever returned the property for taxation, but it was returned for taxation by Mrs. Beecher and she paid the taxes on it. She and her husband have been in pos-

session of the land since the execution of the deeds. The jury returned a verdict for the defendants. The plaintiff excepted to the refusal of a new trial.

*H. E. Oxford, Newbern & Meeks,* and *F. W. Dart,* for plaintiff.
*L. E. Heath* and *C. A. Ward,* for defendants.

EVANS, P. J. (After stating the foregoing facts.) The defendants set up two defenses. One was, that the deeds from the wife to the husband and from the husband to his creditor were executed for the purpose of paying the husband's creditor with the wife's land, and that the plaintiff acquired his deed from the husband's creditor with notice of the wife's equity. This issue was submitted to the jury by the court, under instructions to which no exception is taken. The defendants further defended on the ground that the deeds were procured by duress, and in settlement of a criminal prosecution against the husband. Upon that plea the court instructed the jury, that if they should find that the deeds from Mrs. Beecher to her husband and from him to the Henderson-Powell Company were executed in consideration that the Henderson-Powell Company were not to press the criminal prosecution against the husband, such deeds would be void, even as against a bona fide purchaser. In assigning error on this instruction no exception is taken to the court's declaration on the effect of such conveyance upon subsequent bona fide purchasers without notice. The criticism is, that an absolute deed of conveyance is an executed contract, and the grantor can not impeach it as a muniment of title in the hands of the grantee or a purchaser from him, even though possession has not been yielded under it and it is not founded on a valuable consideration; that E. C. Beecher and Drucilla Beecher are estopped from taking advantage of their own wrong by contending that their deeds are void; that they do not come into court with clean hands, and are not entitled to a cancellation of their deeds. There can be no doubt that a contract to stifle a criminal prosecution is illegal and opposed to public policy; and if the parties voluntarily enter into such contract, they are in pari delicto, and neither a court of law nor of equity will interpose to give relief to either party, but will leave the parties where it finds them. *Adams* v. *Barrett,* 5 *Ga.* 404. It has also been decided that a deed upon an illegal consideration, being an executed contract, binds the parties where the illegality does not appear in the deed,

and passes to the grantee a title upon which he can recover the premises from the grantor in ejectment. *Parrott* v. *Baker,* 82 *Ga.* 364, 371 (9 S. E. 1068) ; *Beard* v. *White,* 120 *Ga.* 1018 (48 S. E. 400). The case presented by this record is not one for the enforcement of an executed contract but for the cancellation of deeds executed under duress of imprisonment. Our Civil Code (1910), § 4255, declares: "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other acts, by which the free will of the party is restrained and his consent induced, will void the contract. Legal imprisonment, if not used for illegal purposes, is not duress." "Duress," as defined by the Civil Code (1910), § 4116, "consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." In the instant case not only was the imprisonment of Beecher used to coerce a deed from his wife to himself and from him to his creditor, but that imprisonment, according to the uncontroverted testimony, was upon a warrant issued by his creditor, who was a magistrate. Its principal purpose was to accomplish a payment of the husband's debt with the wife's land, the value of which was largely in excess of the debt. This court has said that it was improper for a magistrate to give a warrant to the prosecutor to execute, although the prosecutor was a constable, and that it was doubtful whether such constable had the right to deputize another person to assist him in the execution of the warrant. *Davis* v. *State,* 79 *Ga.* 767 (4 S. E. 318). Surely it is against public policy for a magistrate to issue a warrant for an alleged offense against himself, and for the purpose of having the warrant used as a means of collecting a debt in which he is beneficially interested. Richardson *v.* Welcome, 60 Mass. 331; Jordan *v.* Henry, 22 Minn. 245. Says Mr. Justice Clifford, in Baker *v.* Morton, 12 Wall. 150, 158 (20 L. ed. 262) : "Actual violence is not necessary to constitute duress even at common law, as understood in the parent country, because consent is the very essence of a contract, and if there be compulsion there is no consent; and it is well-settled law that moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is sufficient to

destroy free agency, without which there can be no contract, as in that state of the case there is no consent." So far as the record discloses, there was no foundation for the charge preferred against the husband. He was allowed to go home, on his promise to procure a deed from his wife and return to make his creditor a deed. The creditor became impatient of his return, and had him rearrested and put in jail. When he and his wife signed deeds conveying his wife's land to his creditor, he was in the custody of the sheriff, who then released him at the creditor's bidding.

Though a person is arrested under a legal warrant by a proper officer, yet, if one of the objects of the arrest is thereby to enforce the settlement of a civil claim, such arrest is a false imprisonment, and a release and conveyance of property obtained by means of such arrest is void. Hackett v. King, 6 Allen (Mass.), 58; Watkins v. Beard, 6 Mass. 506 (4 Am. D. 170); Brown v. Pierce, 7 Wall. 205, 215 (19 L. ed. 134); Fillman v. Ryon, 168 Pa. 484 (32 Atl. 89); Hartford Fire Insurance Co. v. Kirkpatrick, 111 Ala. 456 (20 So. 651); Osborn v. Giles, 36 N. Y. 365.

As has already been adverted to, where parties enter into an agreement seeking to stifle a criminal prosecution, the parties are in pari delicto, and the law refuses to aid either of them against the other. That rule applies where the nature of the undertakings and stipulations of each, if considered by themselves alone, would show the parties equally in fault; but where the incidental circumstances, such as imposition, oppression, duress, undue influence, taking advantage of necessities or weaknesses, and the like, are used as a means of inducing the party to enter into the agreement, the law will not deem the party influenced by such circumstances as being in pari delicto, so as to deny him any relief from the contract infected with illegality. 2 Pomeroy's Eq. Jur. § 942. Where the fears or affections of a wife are worked upon through criminal proceedings instituted against her husband, and she is induced thereby, against her will, to convey her property to pay his debt and obtain his release from prison, there is duress as to her, even though the debt may be valid, and the prosecution be for a crime which has in fact been committed by the husband. Giddings v. Iowa Sav. Bank, 104 Iowa, 676 (74 N. W. 21); Eadie v. Slimmon, 26 N. Y. 9 (82 Am. D. 395); Harper v. Harper, 85 Ky. 160 (3 S. W. 5, 7 Am. St. R. 583); Adams v. Irving National Bank, 116

N. Y. 606 (23 N. E. 7, 6 L. R. A. 491, 15 Am. St. R. 447); *Southern Express Co.* v. *Duffey,* 48 *Ga.* 358. In the last-named case a mother made à deed to procure the release of her son from arrest under a criminal warrant. The purported consideration of the deed was claimed to represent money embezzled by the son. It was in proof that the son was under arrest and in chains, and the grantee in the deed agreed to release the son and stop the proceedings, though he expressly refused to settle the prosecution, stating that he could not control the public officials. The son was released and the prosecution stopped; and it was held that the deed from the mother was illegal and void. In the opinion McCay, J., said: "If the agreement to release a man under arrest and stop that proceeding is not an attempt to suppress a prosecution, we are at a loss to put a state of facts that does make a case within the rule. If this arrest was illegal, if the agents of the express company had this boy in their own custody, and could let him go or not at their pleasure, then this deed was the clear result of duress, since it was made to release the child of the grantor from illegal imprisonment. A man's child stands, under the law, in the same situation as himself in such cases." It follows that if the deeds from Mrs. Beecher to her husband and from him to his creditor were obtained in the manner as claimed by the defendants, they would be void as against the grantee, or a purchaser from him with notice.

The instruction to the jury is not criticised on the ground that such deeds would be treated as void instruments, so as to affect subsequent bona fide purchasers without notice. The evidence was without conflict that there was no change in the possession of the land as a result of the execution of the deeds to the Henderson-Powell Company, and that the defendants were in possession of the land at the time the plaintiff bought from that company. As to the possession affecting the plaintiff with notice, see Civil Code (1910), §§ 4528, 4530; *Austin* v. *Southern Home Association,* 122 *Ga.* 439 (50 S. E. 382); *Kent* v. *Simpson,* 142 *Ga.* 49 (82 S. E. 440).

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*