## NATIONAL CITY BANK OF ROME, GEORGIA, *v.* MOSS *et al.; et vice versa.*

1. A husband, while insolvent, conveyed by voluntary deed certain lands to his wife, who conveyed the lands to a creditor of the husband as security in consideration of the amount of the debt due by the husband to the creditor. Later the wife filed an equitable petition against the creditor to have canceled her deed to the creditor, on the ground that it was given to secure the debt of her husband. The defendant filed an answer, and later offered an amendment praying that the deed from the husband to the wife be canceled. This amendment was disallowed, *Held*, that the court did not err in disallowing the amendment. The defendant in such case is estopped from denying the deeds of his grantor and privies in estate.

2. Where a husband executed a voluntary deed to his wife while insolvent, in fraud of the rights of his creditors, such deed is void as against the creditors. Where, in such a case, the wife of the husband executed a deed to the same land to one of the husband's creditors, as security for money borrowed by the wife from the creditor with which to pay the debt due by the husband to the creditor, the law will not require a separate suit to cancel and set aside the deed to the wife, and then subject the property, the wife by deed having conveyed the property to the creditor as security, for the debt owed by the husband.

3. The wife having borrowed money from one of the creditors of her husband, in the amount due by her husband to the creditor, and executed a deed to the property which was subject to the husband's debt, in order to secure the payment of the debt with the proceeds of the property, the debt incurred by the wife will not be considered her individual debt, but that of the husband; and a court of equity, under a petition filed by the wife for that purpose, will not cancel the deed of the wife to the creditor, it also appearing that the property conveyed was worth more than the debt. In such

circumstances the wife will be held to hold the land conveyed by the husband to her in trust for the benefit of the husband's creditors.

4. The verdict was contrary to law and the evidence, and the court erred in refusing a new trial.

Nos. 3619, 3620. OCTOBER 13, 1923.

Equitable petition. Before Nathan Harris, judge pro hac vice. Floyd superior court. February 5, 1923.

Mrs. Jennie Moss filed a petition against the National City Bank of Rome, hereinafter called the bank, and others, and alleged in substance the following: On October 30, 1920, and for sometime prior thereto, Luther Moss, her husband, was indebted to the bank in the sum of $1300, or other large sum, which had been due for several months. The bank was "intensely pressing the husband of your petitioner for the payment of said sum." Plaintiff's husband was insolvent and financially embarrassed, and so informed the bank of his condition. Thereupon the bank threatened plaintiff's husband with a criminal prosecution if the money was not paid. The bank, through its president, threatened to have plaintiff's husband arrested and thrown into jail unless plaintiff would execute to the bank a lien on her property hereinafter referred to. At the time plaintiff was the owner of a certain described house and lot in the City of Rome, of the market value of $4,000. With the exception of a warranty deed to secure a debt in favor of J. Z. Lynch, the described property was free from all lien or encumbrance. During the time the bank was so insisting upon payment it became aware, through its president, of the fact that plaintiff was the owner of the property described. Her husband repeatedly begged and implored her to execute to the bank a lien on the property, for the purpose of satisfying the claim of the bank. Finally, after the bank, through its president, had threatened to have plaintiff's husband arrested, the plaintiff executed to the bank a promissory note for the sum of $1316, and a deed to secure the same. The note was dated October 30, 1920, and was due and payable six months from its date, with interest therefrom at the rate of eight per cent. The bank, through its president, with whom all of the negotiations were had, knew of the claim of the bank against plaintiff's husband, and knew that the lien was being executed and the note given to the bank for the purpose of securing a sum of money to be used in paying or securing the indebtedness of plaintiff's husband. The bank knew that

the deed to secure the debt and note were not being executed for the purpose of plaintiff securing money for her own use and benefit, but for the purpose of securing money for a debt and liability of her husband. Upon executing and delivering the deed to secure the debt and note to the bank the latter gave plaintiff a checking account at the bank for the amount that her husband owed the bank, and contemporaneously therewith had plaintiff to sign a check for the sum of the indebtedness of her said husband, and the check was delivered to the president of the bank in settlement and payment of the sum so owed the bank by plaintiff's husband. The bank has cashed plaintiff's check, or has realized the sum of the check and secured the amount of the check to its credit. As a result of executing the note and deed to secure the debt plaintiff for her own use and benefit has never received any sum whatever as money or other thing of profit, and the bank so knows. The bank now has in its possession, custody, and control the note and deed to secure the debt; and these instruments are liable to fall into the hands of an innocent purchaser for value without notice, in which event plaintiff's right would be hampered and plaintiff be without recourse or defense to the note and instrument above described. For the reasons aforesaid the bank has no right to proceed in the courts to enforce the payment of the note and deed to secure the debt. The instruments are not paid, and the same remain on the records of Floyd County as a cloud and lien on plaintiff's property, and they are without consideration and void. Plaintiff is without a remedy at law, and is compelled to come into a court of equity for the protection of her title to the property and to secure complete justice.

The prayers of the petition are: (a) That the court enjoin and restrain the defendant bank and its officers and agents from transferring, selling, or in any way encumbering or disposing of the deed to secure the debt and note described. (b) That the bank be enjoined and restrained from further seeking the collection of note by foreclosure or any proceeding in any court. (c) That the bank be compelled to produce in court the note and deed to secure the debt, and that the same be delivered up and by the court ordered canceled, and that the court require the clerk of the court to cancel the deed to secure the debt from the records of the county, and that the instruments be declared null and void. There was al-

so a prayer for other and further relief, and for process. The plaintiff offered an amendment to her petition, to the effect that, if for any reason she is not entitled to have the deed executed by her to the bank delivered up and canceled, then she prays that she have and recover against the bank judgment in her favor for the sum of $1316 principal, with interest thereon from October 11, 1920, at seven per cent. per annum until paid, etc. The court disallowed this amendment.

The defendant filed its answer to the petition, admitting some of the allegations, but denying the material portions thereof. It denies the allegations of the 4th paragraph of the petition, except it admits that it was insisting on the payment of the money due by plaintiff's husband to it, the money being due on a mortgage note signed Chambers Automobile Co., and L. R. Moss, the husband of the plaintiff. It admits that the plaintiff's husband was insolvent and financially embarrassed and so informed it of his condition, but expressly denies any threats of criminal prosecution. The allegations of the 5th paragraph of the petition are denied, except as expressly admitted, that is that plaintiff's husband owned the premises on the 8th day of June and up until the 11th or 12th of June, 1920, subject to a lien. On June 8, 1920, said Chambers Automobile Co. and plaintiff's husband executed a mortgage for about $2659 to the bank, which was duly filed for record on June 10, 1920. On or about June 11, 1920, plaintiff's husband made to her what purported to be a deed of gift to the property, with no consideration expressed therein, and with no consideration of which the bank knows. On the same date the plaintiff executed a warranty deed to secure a debt to J. Z. Lynch for $1090.88, due one year after date, at 8 per cent. interest. It is expressly denied that the deed was given to secure any debt of plaintiff's husband, and that the bank, through its president, had threatened to have plaintiff's husband arrested. Said deed was given to secure a loan, and the money realized on the loan was paid to the plaintiff. After the payment to plaintiff she had the absolute free right to dispose of it as she saw fit, and the same was in no wise a conditional loan. The bank avers that, several days after the money was loaned to plaintiff, G. A. H. Harris Jr., a practicing attorney at the Rome bar, came into the bank and paid off the debt against plaintiff's husband with a check signed by him-

self or by some one other than the plaintiff. The bank believes that this was the same money realized from the loan; if it was, the payment was the voluntary act of the plaintiff. It is denied that the notes are liable to fall into the hands of an innocent purchaser. The fact that the plaintiff's husband was insolvent when he contracted the debt with the bank was known to the plaintiff, or could easily have been known by the exercise of ordinary care; yet, after becoming indebted to the bank, he made her a deed of gift to the property in question, which deed the bank avers was void because made without a valuable consideration while the plaintiff's husband was insolvent. The bank prays, that it have a judgment against the plaintiff for the sum of $1316, with 8 per cent. interest since October 30, 1920; that, in the event it be not entitled to the judgment against the plaintiff, it have a special judgment and decree for $1316, with 8 per cent. interest since October 30, 1920, against the property covered by the security deed, subject to the claim of J. Z. Lynch; and that the property be ordered sold and the judgment and decree satisfied out of the proceeds of the sale.

The defendant amended its answer as follows:

" First. That in case the security deed executed by the plaintiff to this defendant should be set aside as an effort to secure the payment of the husband's debt out of the wife's separate estate, this defendant shows that the property upon which such security deed was given should not be adjudicated to be the wife's separate estate; but inasmuch as such property was conveyed by said Luther Moss to the plaintiff after the debt due the National City Bank of Rome, Georgia, by the said Luther Moss had been incurred and while the said Luther Moss was insolvent, that the court should hold and decree, and it is prayed that the court do hold and decree, that the said conveyance from the said Luther Moss to his wife, the plaintiff in this case, be likewise set aside and declared null and void and of no effect against this defendant, as being in fraud of the rights of the creditors of the said Luther Moss.

" Second. This defendant respectfully shows to the court that shortly after the suit was brought by plaintiff against this defendant, the said Luther Moss moved outside of the jurisdiction of this court, to wit, into the State of Tennessee, where no process from any Georgia court could reach him; that the said Luther Moss was then and is now insolvent; and that the said Luther

43

Moss, as will be shown by the pleadings in this case, admits a debt against him in favor of the National City Bank in case the deed from the plaintiff to this defendant is set aside; that being so, this defendant, National City Bank of Rome, Georgia, respectfully shows to the court that Mrs. Jennie Moss, plaintiff in this case, is holding the property as trustee of her said husband in fraud of the rights of the creditors of her said husband, and, so far as this defendant National City Bank knows and believes, there are no other creditors of the said Luther Moss.

" Wherefore this defendant, National City Bank, prays: (A) Judgment against Luther Moss for the amount of the said deed, in case the deed from plaintiff to defendant is set aside. (B) That a decree of this court be entered, in case the deed from plaintiff to defendant is set aside, declaring that the conveyance from Luther Moss to his wife, the plaintiff in this case, dated June 11, 1920, is a conveyance in fraud of the rights of the creditors of said Luther Moss, that is to say, in fraud of the rights of the National City Bank of Rome, Georgia, and that the same be set aside and held null and void. (C) That the plaintiff, the said Mrs. Jennie Moss, be held and declared to be a trustee of said property for the benefit of the National City Bank of Rome, Georgia, a creditor of her said husband Luther Moss, and such other creditors as may appear and interplead in this action, if there be other creditors. (D) That the court decree that, upon tender or payment by the National City Bank of Rome, Georgia, to the holder of the prior security deed, that is, J. Z. Lynch, who was J. Z. Lynch at the time of this proceeding and who this defendant is informed and believes is now W. B. Mebane, who is attorney at law and of record in this case for the plaintiff, and upon payment thereof, that the court decree that in case such payment is accepted the said deed may be transferred to this defendant; and in case the said payment is not accepted, then that this defendant shall have a right to levy any execution that it may hereby obtain, or that it may obtain in any other pro- ceeding, on the said land for the purpose of satisfying the said execution. (E) Such other and further relief as may be fit and proper in the premises." This amendment was disallowed, and the defendant excepted.

The jury trying the case returned a verdict in favor of the plaintiff. The bank filed a motion for new trial, which was over-

ruled, and it excepted. The plaintiff filed a cross-bill of exceptions to the disallowance of the amendment offered by her.

*Willingham, Wright & Covington,* for National City Bank.

*Porter & Mebane* and *M. B. Eubanks,* contra.

HILL, J. (After stating the foregoing facts.)

1. The National City Bank of Rome filed an amendment to the answer to the plaintiff's petition, in which it prayed " that a decree be entered, in case the deed from plaintiff to defendant is set aside, declaring 'that the conveyance from Luther Moss to his wife, the plaintiff in this case, dated June 11, 1920, is a conveyance in fraud of the rights of the creditor of the said Luther Moss, that is to say, in fraud of the rights of the bank, and that the same be set aside and held null and void." Another prayer of the amendment to the answer was " that the plaintiff, the said Mrs. Jennie Moss, be held and declared to be a trustee of said property for the benefit of the National City Bank of Rome, Georgia, a creditor of her said husband, Luther Moss, and such other creditors as may appear and interplead in this action, if there be other creditors." This amendment was disallowed by the court. We are of the opinion that as to the first part of the answer the court did not commit error in disallowing it. As far back as the case of *McCleskey* v. *Leadbetter,* 1 *Ga.* 551, it was held: " A party claiming under a grantor, as distributee or legatee, can not impeach his deed for want of consideration, or because it was intended to defraud creditors. Both the grantor and his privies are estopped from denying it." Under the above decision, which has never been overruled so far as we are aware, the defendant would be estopped from having the deed from the husband to the wife canceled. Therefore the court below did not err in disallowing that portion of the amendment to defendant's answer which sought to cancel the deed from the husband to the wife, the plaintiff.

2. However, we are of the opinion that the other portion of the amendment to the answer, which sought to declare the plaintiff a trustee of the property conveyed to her, for the benefit of the bank, should have been allowed. The following sections of the Code of 1910 throw light upon and are applicable to the present case: § 4519. " Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient

in protecting from an anticipated wrong, or relieving for injuries done." § 4521. "He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject matter of the suit." § 4522. "Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject of the suit, provided the court has jurisdiction for that purpose." § 4523. "Equity considers that done which ought to be done, and directs its relief accordingly." § 4532. "Equity will not force parties to litigate in order to have done what they ought, and are willing, voluntarily to do."

In *Blalock* v. *Newhill*, 78 *Ga.* 245 (1 S. E. 383), this court held: "Where both parties to a suit for land derive title from a common grantor, the elder of the two would take precedence, in the absence of fraud or illegality therein; and where it appears that the holder of the junior title was put on such inquiry as was equivalent to notice of the senior title, a verdict finding in favor of the latter was demanded by the evidence. . . Where, on a bill in equity, a decree was rendered against the defendant, fixing the title in the complainant, to whom the defendant was indebted, the fact that the defendant had voluntarily made a deed to his wife while he owed the debt and was insolvent, and that he subsequently conveyed it to the complainant, did not make her conveyance void as being a pledge or sale of her separate property in payment of the debt of her husband." In delivering the opinion of the court in the above stated case, Hall, J., said: "Both parties derived title from a common grantor. The plaintiff's title was the elder of the two; and in the absence of fraud or illegality in procurement, it took precedence of the defendant's. The decree under which the plaintiffs obtained their title was older than the judgment on which the execution issued, which was levied on and sold the land when Blalock became the purchaser. Apart from the rule caveat emptor, which ordinarily obtains at such sales, there is ample evidence in this record to charge Blalock with actual notice of plaintiffs' right to the property, and to affect him with bad faith in bringing it to sale in disregard of their rights, for he knew of the pendency of the suits in which they obtained a decree for the land, and he is chargeable with notice of all the facts that could have resulted from a full investigation of the matter,

which, in good conscience, he should have made, having been thus put upon inquiry. The technical defects he discovered in the proceeding at their instance, if they in fact existed, while they might have resulted in an erroneous or irregular decree, were not such as would have rendered it void. Nor did it matter that the title to the land was in the wife of the common grantor of the parties litigant at the time the decree was rendered, and that she subsequently conveyed it to the plaintiffs in execution, and that there was performance of this decree in their favor; it was not a pledge or sale of her separate property in payment of her husband's debts in a legal sense, for she held under a voluntary conveyance from him at a time when he owed this debt and was utterly insolvent, and merely did voluntarily what, in honor and conscience, she should have done, and what she would have been compelled to do had the parties been forced to resort to law for the assertion and enforcement of their rights. As to the superiority of plaintiffs' title over defendant's, see *Scott* v. *Singer,* 54 *Ga.* 689; *Wood* v. *McGuire's Children,* 17 Id. 303, 321; *Miller* v. *Surls,* 19 Id. 331, 333; *Harrison* v. *Hatcher,* 44 Id. 639. Without reference to any other question made by this record, we are of opinion that the verdict in this case is not only sustained, but imperatively demanded, by the law and evidence; and even if there was error in some other particulars (and we do not decide that there was), it could have no influence in bringing about a different result on another hearing, and therefore any discussion of the questions raised by them would be fruitless and unnecessary."

In accord with the decision just cited is the case of *Smith* v. *Smith,* 143 *Ga.* 837, 839, 840 (85 S. E. 1034), where it was said: "There is evidence to show that the debtor, Jim B. Smith, was insolvent at the time he executed the deed to his wife, and that the deed was made to defeat his creditors. This being so, the deed to the wife was void; and in a case like the present the law will not require a separate suit to cancel and set aside that deed and then subject the property, where the parties themselves have put the title where it properly belongs, in order to satisfy creditors with the proceeds of the property, which is subject to the creditors' claims." The pleadings show that at the time the plaintiff's husband executed the voluntary conveyance to his wife, he was insolvent. That being true, the voluntary conveyance to his wife would

be void as against his creditors. But, the husband having made the deed to the wife in the circumstances stated, the deed will be held to be to the wife in trust for the benefit of his creditors, and a court of equity will compel the parties to do what they ought to do (Civil Code of 1910, §§ 4523, 4532); and therefore, the wife having done what she ought to have done with her husband's property, that is, conveyed it to one of the creditors of her insolvent husband, the property should be held subject to the husband's debt; and while, under the decision of *McCleskey* v. *Leadbetter,* supra, the wife's vendee can not have the deed canceled, a court of equity will compel the parties to do what in good conscience they ought to do, and that is to have the property, which is worth more than the husband's debts, subjected to the valid debts of the husband. The debt assumed by the wife to the bank, in the above view, will not be considered the debt of the wife, but that of the husband. The wife is not generally liable for the payment of this indebtedness. If the bank is successful in establishing its case as made in the amendment, which the court below refused, it would only be entitled to a decree subjecting the property to the payment of its debt, and in no event would the wife be liable for any deficiency in the judgment if this property did not bring enough to discharge the debt secured by the wife's deed to the bank. In other words, if the bank establishes its contention, it would be entitled to a judgment for the amount of its debt to be satisfied out of the property secured by the security deed, subject, of course, to the superior claim of J. Z. Lynch, who, it is admitted, has a security deed older and superior to the bank's deed to the property in controversy.

This conclusion also disposes of the question raised by the cross-bill of exceptions, wherein the plaintiff excepted to the ruling disallowing her amendment in which she prayed for a judgment for the amount alleged to have been paid by her to the bank on her husband's debt. Inasmuch as plaintiff had secured the money with the property conveyed to her by her husband, who was insolvent at the time, which property was subject to his debts, she can not recover a judgment for the money so paid.

In the above view we do not construe the amendment to mean that the bank is denying the title of its grantor, nor denying the title of the husband or wife.

*Judgment reversed in part and affirmed in part on the main bill of exceptions; and affirmed on the cross-bill of exceptions. All the Justices concur.*

RUSSELL, C. J., and ATKINSON, J., concur in the result.